The Chief Justice
delivered the opinion of the court:
The original plaintiffs below, Esther Holladay and her husband, Ben Holladay, having died during the pendency of the suit, it was revived in the names of Rinda Holladay and Ben Campbell Holladay, the infant children and sole devisees and legatees of all the real and personal estate of Mrs. Esther Holladay, and they were made compláinants in the bill as such. Rufus Ingalls, tifie executor of Mrs. Holladay, and Joseph Holladay, executor of Ben Holladay, were also made parties plaintiff.
The bill alleges that on July 5,' 1879, Esther Holladay, the • mother of the infant complainants, was seized in fee, as her separate property, of a certain lot in the City of Washington, and that on that day she made her promissory note, bearing interest at 7 per cent., payable semi-annually, three years after date, and at the same time also a deed of trust, her husband, Ben Holladay, executing it with her, to secure the note. This deed of trust was in the usual form and recited that Esther Holladay owed H. C. Towers $5,000, and to *578 secure the payment of that sum, she conveyed the title of the property to Samuel E. Middleton and D. W. Middleton, as trustees. Esther Holladay never owed Towers, who was a clerk in Middleton & Company’s bank, the beneficiary in the deed, anything, Her husband, Ben Holladay, was a customer of Middleton & Co., bankers, the trustees, named in the deed composing that firm, and the note and deed were made by her to secure Middleton & Company the repayment of any advance made to said plaintiff’s husband, Ben Holladay, by said Middleton & Company, bankers, in their line of business with him as a customer, as by overchecking and overdrawing his account with them as bankers, for a definite period, and delivered to that firm, and that in so doing she merely bound herself and her said property as surety for such advance for a definite period, and is entitled to all the rights and privileges of a surety.
By the eight paragraph of the bill it is said that when the note fell due July 8, 1882, no attempt was ever made by Middleton & Companjq or any one else, to enforce the collection thereof, in any way, and that if the note “is in existence, the note and the indebtedness secured thereby is barred and extinguished by the Statute of Eimitations and the -lapse of time.”
The bill further states that on the 31st day of May, 1884, Middleton & Company failed and assigned all their assets to George F. Green, and in July, 1884, this court appointed Frank Morey, receiver, who qualified at once. Between July 8, 1882, when the note matured, and May 31, 1884, when Middleton & Company failed, almost three years had elapsed, and' any indebtedness of her husband, if he owed the firm anything at either of the above dates, was barred by lapse of time and the Statute of Eimitation, and that owing to the laches and neglect of the owners of any such claim, if any such existed against Ben Holladay, they have lost their remedy.
The eleventh paragraph claims that in consequence of such neglect, laches and delay by which all remedy against Ben Holladay has been lost, she, Esther Holladay, having been merely such surety for her husband, is released from any *579 indebtedness arising out of her executing the deed, and that she owes nothing thereon to said firm, their assignee or to said receiver.
In paragraph 12 she says that “she is entitled to have said note, on which there is nothing now due, delivered up to her, if the same be now in existence, by said Middleton & Company.”
She specially prays that she be released from all obligation on the note and deed and that the court will decree a release of the deed, and a reconveyance ■ to her by the proper party. There is also a prayer for general relief.
The defendant Towers answers and admits that Esther Holladay was on July 5, 1879, seized in fee, as her separate estate, of the lot, and made the note and deed on that day; that at that date he was a cleric in Middleton & Company’s bank; that Mrs. Holladay never owed him anything; that the note and deed were executed and delivered as stated in the bill, and for the purpose alleged; he does not know whether any attempts were ever made to enforce their collection; he does not know what has become of the note, nor if it is in existence; that upon the execution of the note, he, Towers, indorsed it, and that he never has seen it since, nor ever heard of it until the bringing of this suit. Towers admits the failure and assignment of Middleton & Company, and disclaims all right, title and interest in and to the note, and to the lot.
The defendant Daniel W. Middleton, in his answer under oath, admits the averments in the bill, as to the fact of Mrs. Holladay being seized in fee of the property, but charges that her husband, Ben. Holladay, paid for it out of his money, and denies that she paid for it out of her own separate property; he admits that Mrs. Holladay did not owe Towers anything, and that her husband, Ben. Holladay, was a customer of the bank. He swears positively that he “is not informed and does not know of the purpose of the said Esther in executing said note and deed.” On information and belief he denies 1 ‘ that said note and deed of trust were delivered to the said Middleton & Company by the said Esther.” On information and belief, he denies that in making the note and *580 deed Mrs. Holladay merely bound herself as surety for a definite period for advances and loans to her husband by his firm. He admits that the note fell due July 8, 1882, and that nobody has ever made any attempt to collect it or to enforce the deed, and denies that the note and the ’indebtedness secu'red by it is barred by the Statute of limitations or lapse of time. He admits the averments of the bill as to failure, and so forth, of his firm, and that almost three years have elapsed since the maturity of the note and failure of the firm, and that Ben. Holladay’s debt was an open account. He neither admits or denies the averments as to the laches charged in the bill. He denies that the debt of Ben. Holladay to the firm, in consequence of the laches charged in the bill, has been released or extinguished, or that Mrs. Holladay is released from liability on the note or deed of trust. He says, that it appears from the books of Middleton & Company, that on July 5, 1879, Ben. Holladay owed the firm for overdrafts, $847.75; that on July 30, 1879, Holladay delivered the note and deed to his firm, at which date he owed them $2,066.58, as shown by their books, on open accounts for overdrafts. He avers that the note and deed were made payable to Towers, and were delivered to his firm by Ben. Holladay, “and was transferred, indorsed and delivered to his firm to hold and to enable them to obtain payment of said indebtedness of said Ben. Holladay and of such indebtedness as he, the said Ben. Holladay, might afterwards incur to” his firm; that from July 30, 1879, Ben. Holladay’s debt to the firm never diminished, but gradually increasd, and at their failure there was $22,150.10 due to the firm “as appears from the books of said firm.” He avers that his firm held possession of the note and deed, and the latter at Ben. Holladay’s special request was not recorded, but that said Fstlier and Ben. Holladay having executed a deed of trust of the lot to Frank T. Rawlings and Charles B. Maury, to secure a loan of $5,000 made by the Arlington Fire Insurance Company, which said last mentioned deed was recorded on the 2nd day of May, 1880, their firm put the deed to them on record Maj^ 3d, 1880, and that by the said act of Ben. and *581 Esther Holladay, their firm became second and postponed to the deed to the Arlington Insurance Company. He avers that the note to the insurance company not having been paid at maturity, the trustees, Rawlings and Maury, sold the lot and that there now remains in Rawlings’ and Maury’s hands as trustees $3,641.48, which he claims is j.ustly applicable to the payment of the note to H. C. Towers, dated July 5, 1879. He avers that his firm held the latter note till their failure, and then delivered it to George F. Green, and before their failure frequent demands had been made on Ben. Holladay to pay the firm his indebtedness mentioned.
The separate answer of Samuel E. Middleton is identical with that of Daniel W. Middleton.
Green’s answer is also the same as that of the Middletons up to the 13th paragraph and then he states that it appears from the books of Middleton & Company that on the date of Mrs. Holladay’s note, July 5, 1879, Ben Holladay owed the firm $1,147.57; that the note and deed were delivered to Middleton & Company by Ben Holladay, July 30, 1879, at which date he owed the firm $2,691.40; that said deed of trust note was made payable to Towers and indorsed by him before the same was delivered to Middleton & Company, by Ben Holladay, and was transferred, indorsed and delivered to the firm to enable them to obtain payment of said indebtedness of said Ben Holladay and of such indebtedness as he might afterwards incur; and he swears when the firm failed Ben Holladay owed it $20,579.46.
He filed with his answer a copy of the account of the trustees, Rawlings and Maury, showing they had on the sale of the lot and payment of the note to the company a balance of $3,641. 48. He swears that he has had the note in his possession ever since his appointment as receiver. He says that on July 5th, 1879, the date of the note, Ben Holladay was insolvent, and has ever since been so, and has no property subject to execution.
The issue which is thus presented by the pleadings I have stated fully, because of the peculiar manner in which it seems to be necessary to dispose of this case. It is evident that the *582 grounds upon which the complainants claim the testimony entitles them to relief is somewhat obscurely developed by the pleadings. It is claimed on behalf of the Complainants that the testimony of Mrs. Holladay, which was taken before her decease, proves that the note and deed of trust, which it is said in the answer of Middleton, were executed by Holladay and wife for the benefit of the Arlington Insurance Company for $5,000, were executed by her, as she says, for the purpose of raising money to extinguish .the indebtedness evidenced by the deed of trust which had been executed by her in favor of the Middletons, and she swears positively that the check of the Arlington Insurance Company for $5,000 was given to her as the proceeds of the discount of her note, which check was delivered by her to Middleton & Co. as and for the full payment of the amount of her note, which she had previously executed to Towers for the benefit of Middleton,,& Co., and that thereby, as she testifies, the debt evidenced by this deed of trust, and by the note that was executed to Towers, was extinguished. There is no testimony to rebut this, unless it be the statement made by D. W. Middleton in his testimony.. He testifies to the receipt of this check of the Arlington Insurance Company for $5,000; admits that it was received on the 3d day of May, 1880, by Middleton & Company; admits that it was held until the 30th day of June following before any credit was entered upon the books to anybody, and then, he says, that in pursuance of a request of Mrs. Holladay, it was put into the account of Ben Holladay, but it was never entered to the credit of Mrs. Holladay.
In the examination in chief of D. W. Middleton he was asked the direct question, what conversation, if any, he ever had with Mrs. Holladay respecting the application of this check of the Arlington Insurance Company, to which he answers 1 ‘ never a word; ’ ’ yet in direct contradiction to this he says, as though matter of his own knowledge, that the proceeds of this check were placed to the credit of Ben Holladay’s account at the request of Mrs. Holladay. We think the testimony of Middleton, contradicted as he is by himself, as to his having had the opportunity of knowing that Mrs. Holladay *583 ever made such a request, cannot be relied on to overcome the positive testimony of Mrs. Holladay. Besides he is directly and unqualifiedly impeached by the testimony of two very respectable citizens of Washington, and no one appears to support his character for truth and veracity. Mrs. Holladay is unimpeached, and we think her testimony is consistent with and sustained by the facts otherwise shown as to the application of this check. It is a suspicious circumstance that this check should have been given and handed into Middleton & Company’s bank on the 3d day of May, 1880, and that no application whatever should have been made of it until nearly sixty days thereafter.
Mrs. Holladay states that she never authorized the application of the check to the account of her husband.
Now, why, if her purpose and object were to have this second five thousand dollars also applied to the benefit of her husband and to extend his credit at the bank, was it not at once placed to the credit of Holladay? Such is the usual practice and custom of banks; no bank doing legitimate business, would permit a security of that kind to be in their bank without their books showing for what purpose it was there and without placing it to the credit of the party entitled to it. There is no explanation made whatever by the Middle-tons, or by any one, as a reason for this delay, except the suggestion that there was some purpose or plan agreed upon between the Middletons and Ben Holladay, without the knowledge or authority of Mrs. Holladay. This, if true, could not bind Mrs. Holladay, or any one claiming under her.
It was suggested in argument that these parties being creditors of Holladay, and it being really his money, they could apply it where it properly belonged; but the testimony shows that in 1874, Holladay gave to his wife certain stocks and bonds; that she held- the same for a considerable time, and finally disposed of them for the sum of $60,000, and that she subsequently applied a portion of the $60,000 to the purchase of the premises upon which said deeds were placed. The proof shows, by the testimony of several reputable witnesses, who say that they knew Holladay at and before the *584 year 1874, that he was a man in possession of a large amount of property and money, with excellent credit, and was generally understood to be a rich man. The proof shows that for years after the gift of these stocks and bonds to his wife Holladay continued to do a large business and was in the possession of considerable property and handled large sums of money.
It is perfectly competent for a party, so far as creditors are concerned, to give money to his wife, unless the transfer is made, and shown to have been made, in pursuance of some scheme inaugurated for the fraudulent purpose of preventing creditors from collecting their legal demands, or unless he be shown to be actually insolvent at the time of making the gift. It prima facie appears, that at the time that he gave these stocks to his wife, in 1874, he was perfectly solvent and there was no equitable right in the Middletons or any of the creditors of Holladay to claim any part of the fund growing out of the sale of these stocks, either directly or indirectly, for the payment of their debts.

The decree of the court below, dismissing the bill will be reversed, and a decree entered that the money in the hands of Rawlings and Maury as trustees be paid to the complainants.